UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAWRENCE H. STONE,

          Plaintiff,

vs.                                             Case No. 2:05-cv-209-FtM-29SPC

CITY OF EVERGLADES CITY, FLORIDA;
SAMMY HAMILTON, JR.,

          Defendants.
_____

**OPINION AND ORDER**

     This matter comes before the Court on the following motions: Motion of Defendant City to Dismiss Count I of Second Amended Complaint with Prejudice (Doc. #50); Plaintiff's Motion for Partial Summary Judgment (Doc. #53); Dispositive Motion to Dismiss Count I of Plaintiff's Second Amended Complaint by Defendant Hamilton (Doc. #56); Motion of Defendant City to Strike Portions of Plaintiff's Affidavit (Doc. #62); Motion by Defendant Hamilton to Strike Plaintiff's Motion for Partial Summary Judgment or Defer Ruling On Motion (Doc. #71); Motion to Dismiss Count I of Plaintiff's Supplemental Complaint by Defendant Hamilton (Doc. #109) and adopted by the City (Doc. #113); and defendant Hamilton's Motion for Protective Order, or Alternatively to Expedite Ruling on Hamilton's Motion to Dismiss or Alternatively to Allow Hamilton to Conduct Discovery Regarding Plaintiff's First Amendment Retaliation

Claim (Doc. #111). The parties have filed oppositions, supporting documents, and supplemental authority.

With the Court's permission (Doc. #104), plaintiff filed a Supplemental Complaint (Doc. #105). The Supplemental Complaint is the operative pleading, and the Court will apply the prior motions to this pleading although the counts will be re-numbered.

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(*en banc*). To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th

Cir. 1997). However, the Eleventh Circuit imposes "heightened pleading requirements" for § 1983 cases which involve individuals entitled to assert qualified immunity. Swann v. S. Health Partners, Inc., 388 F.3d 834 (11th Cir. 2004)(citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993)). The heightened pleading standard is not otherwise applicable. The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. Marsh, 268 F.3d at 1036 n. 16.

**II.**

The Supplement Complaint (Doc. #105) sets forth the following facts: From 1996 to 2005, plaintiff was a water and wastewater treatment plant operator for the City of Everglades City, Florida. Plaintiff reported a series of safety and environmental issues regarding the plant to defendants by status reports or letters dated July 13, 2004, August 26, 2004, October 14, 2004, and October 21, 2004. Plaintiff made the reports to defendant Mayor Sammy Hamilton, Jr., (Mayor Hamilton), city council members, "and other municipal officials." On or about January 31, 2005, plaintiff reported a "crisis situation" at the plant and warned of a "series of safety and environmentally dangerous problems."

Plaintiff alleges that Mayor Hamilton "created an atmosphere of intimidation and hostility" when plaintiff attempted to report the alleged safety and environmental violations or potential violations to government agencies. Plaintiff further alleges he

was terminated by Mayor Hamilton as a result of these reports and criticism, was forbidden to approach the plant, and was placed on notice that criminal trespass charges could be brought if he approached the plant.

The Supplemental Complaint (Doc. #105) asserts a federal RICO claim in Count I as to both defendants. Count II alleges a claim under 42 U.S.C. § 1983 of retaliation for plaintiff's exercise of his First Amendment right to free speech as to both defendants. Count III alleges a violation of Florida's Whistleblower's Act under FLA. STAT. § 112.3187(3)(b) as to the City only.

### III.

Count I of the Supplemental Complaint (Doc. #105) attempts to state a civil claim under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act. Count I alleges that defendants or their agents interfered with the employment of plaintiff's wife by attempting to have her disciplined or fired as an act of intimidation to influence, delay or prevent her testimony in plaintiff's instant lawsuit. Count I also alleges that defendants or their agents terminated Donnie McDowell's employment with the City of Everglades City as an act of intimidation to influence, delay or prevent his testimony in plaintiff's instant lawsuit. Both these events are alleged to be "predicate acts" under the RICO statute. "Defendants" are the alleged "enterprise," and the common goal alleged is tampering with plaintiff's witnesses. In a conclusory fashion Count I alleges that defendants engaged in "a

pattern or racketeering activity" and "unlawful activity" as defined by federal statutes. (Doc. #105, ¶¶ 17, 18.) It is asserted that plaintiff's property has been damaged "because key witnesses in the instant lawsuit have been tampered with, tainted, or chilled, with a deleterious effect on said lawsuit," and as a direct and proximate result plaintiff was required to spend money to retain an attorney "to defend himself against the said acts . . ." (Id. at ¶ 21.)

The pleading requirements of a civil RICO action have been discussed at some length in Williams v. Mohawk Indus., 465 F.3d 1277, 1282-1291 (11th Cir. 2006). In addition to an impact on interstate or foreign commerce, a civil RICO claim is required to set forth the four requirements of 18 U.S.C. § 1962(c) and the two requirements of 18 U.S.C. § 1964(c). At the least, Count I is deficient in failing to set forth any facts relating to interstate or foreign commerce, or defendants' participation in the operation or management of the enterprise itself; while the pleading of some other elements is problematic (including the description of the enterprise and both components of § 1964(c)), the Court need not resolve those issues because Count I is not sufficiently pled in any event. The Motion to Dismiss Count I of Plaintiff's Supplemental Complaint by Defendant Hamilton (Doc. #109), and adopted by the City (Doc. #113), will be granted.

**IV.**

Count II of the Supplemental Complaint alleges a claim under 42 U.S.C. § 1983 of retaliation for the exercise of plaintiff's First Amendment rights. Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under § 1983, plaintiff must allege and prove that (1) defendant deprived him of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Plaintiff also must allege and prove an affirmative causal connection between defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995).

Under § 1983, governmental entities may be held liable only for the execution of a governmental policy or custom. Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). Plaintiff must identify the municipal policy or custom which caused his injury, Davis v. DeKalb County Sch. Dist., 233 F.3d 1367, 1375 (11th Cir. 2000), cert. denied, 532 U.S. 1066 (2001), and must allege that the policy or custom was the moving force of the constitutional violation. Cuesta v. Sch. Bd. of Miami-Dade County, Fla., 285 F.3d

962, 967 (11th Cir. 2002). See also Board of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998), cert. denied, 525 U.S. 870 (1998); McDowell v. Brown, 392 F.3d 1283, 1292 (11th Cir. 2004). Additionally, only government officers or groups who have final policymaking authority may subject the government entity to a § 1983 claim. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1312 (11th Cir. 2006), cert. denied, 127 S. Ct. 559 (2006). The final policymaker is not necessarily the same as the final decision maker. Quinn, 330 F.3d at 1325-26.

**A.**

While the City initially filed a motion to dismiss the retaliation claim (Doc. #50), it consented to the filing of the Supplemental Complaint (Doc. #100) and then filed an Answer (Doc. #112) to the retaliation claim. Accordingly, the City's prior motion to dismiss the retaliation claim will be denied. Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002); Byrne v. Nezhat, 261 F.3d 1075, 1093 n.35 (11th Cir. 2001).

**B.**

Mayor Hamilton argues that the speech identified in the Supplemental Complaint did not address matters of public concern, and therefore was not protected by the First Amendment. Mayor Hamilton also asserts that he is protected by qualified immunity. (Doc. #56.) To some extent, these issues tend to merge.

**(1)**

Qualified immunity is a defense which generally may be asserted in a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim. Smith v. Siegelman, 322 F.3d 1290, 1294 (11th Cir. 2003); Skrtich, 280 F.3d at 1306; Denno v. School Bd. of Volusia County, 218 F.3d 1267, 1270 (11th Cir. 2000). A complaint will be dismissed under a qualified immunity defense if the complaint fails to allege the violation of a clearly established constitutional right. Siegelman, 322 F.3d at 1294; Marsh, 268 F.3d at 1022; Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). Whether the complaint alleges the violation of a clearly established constitutional right is a question of law, accepting the facts alleged as true and drawing all reasonable inferences from these facts in favor of plaintiff. Siegelman, 322 F.3d at 1294; Chesser, 248 F.3d at 1121.

To be eligible for qualified immunity, defendant Hamilton must first show that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003), cert. denied, 540 U.S. 879 (2003); Siegelman, 322 F.3d at 1295. There is no dispute as to the fact that defendant Hamilton was acting within the scope of his discretionary authority as Mayor of the City of Everglades City at the time of the events in question.

Since Hamilton was acting within his discretionary authority, the burden shifts to plaintiff to establish that qualified immunity

is not appropriate. Wood, 323 F.3d at 877; Siegelman, 322 F.3d at 1295. The Court conducts a two-part inquiry to determine whether qualified immunity is appropriate: First, the court determines whether the factual allegations, if true, establish a constitutional right. Hope v. Pelzer, 536 U.S. 730, 736 (2002); Saucier v. Katz, 533 U.S. 194, 201 (2001). If no constitutional violation is established, there is no need to go further and defendant prevails. Chavez v. Martinez, 538 U.S. 760, 766 (2003). If plaintiff's version of the facts establish a constitutional violation, the second inquiry is whether, at the time of the violation, the right was clearly established in the specific context of the case. Saucier, 533 U.S. at 201; Dahl v. Holley, 312 F.3d 1228, 1233 (11th Cir. 2002).

**(2)**

The constitutional right at issue is plaintiff's First Amendment right of free speech. The general parameters of the First Amendment in the public employment context are well established. "A government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment." City of San Diego v. Roe, 543 U.S. 77, 80 (2004). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 126 S. Ct. 1951, 1957 (2006)(internal citations omitted). Accordingly, as a general matter, a government entity may not discipline a public employee in

-9-

retaliation for protected speech. Mitchell v. Hillsborough County, 468 F.3d 1276, 1283 (11th Cir. 2006); Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).

"Although it is well-established that an employer may not discharge a public employee in retaliation for the employee's exercise of his right to freedom of speech, that right is not absolute." Brochu v. City of Riviera Beach, 304 F.3d 1144, 1157 (11th Cir. 2002). "The problem in any case is to arrive at a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). Because of this governmental interest, "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." City of San Diego v. Roe, 543 U.S. at 80.

The Supreme Court has directed that the four-step Pickering and Connick v. Myers, 461 U.S. 138 (1983) test be applied to claims that a public employee's First Amendment rights were violated for work-related speech. See, e.g., City of San Diego v. Roe, 543 U.S. at 80; Brochu, 304 F.3d at 1157; Cook v. Gwinnett County Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005); McKinley v. Kaplan, 262 F.3d 1146, 1149-50 (11th Cir. 2001); Maggio v. Sipple, 211 F.3d 1346, 1351 (11th Cir. 2000). This test examines (1) whether the

employee's speech is fairly characterized as constituting speech as a citizen on a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service, (3) whether the speech played a substantial part in the government's challenged employment decision, and (4) whether the government has shown by a preponderance of evidence that it would have made the same employment decision in the absence of the protected conduct. Battle v. Bd. of Regents, 468 F.3d 755, 759-60 (11th Cir. 2006); Chesser, 248 F.3d at 1122-23; Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1563-64 (11th Cir. 1995)(citing Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989)). The first two elements of this test are "questions of law designed to determine whether the employee's speech is protected by the First Amendment." Beckwith, 58 F.3d at 1564. The final two elements are questions of fact "designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision." Id. See also Battle, 468 F.3d at 760.

Thus, to establish that he was terminated in violation of the First Amendment, plaintiff must demonstrate: (1) that his speech was as a citizen addressing a matter of public concern; (2) that his interests as a citizen in commenting on the matters of public concern outweigh the legitimate interests of the County as an employer; and (3) that the speech played a substantial or motivating part in the County's decision not to promote, to

discipline, and/or to fire him. If plaintiff can establish all three elements, his claim will still fail if the City proves by a preponderance of the evidence that it would have fired him regardless of his speech. Akins v. Fulton County, Ga., 420 F.3d 1293, 1303 (11th Cir. 2005), cert. denied, 126 S. Ct. 1074 (2006); Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1282 (11th Cir. 2005).

**(3)**

The threshold issue is for the Court to determine whether plaintiff's speech is protected by the First Amendment. Brochu, 304 F.3d at 1157. This requires the court to determine "whether the employee spoke as a citizen on a matter of public concern." Garcetti, 126 S. Ct. at 1958. If the answer is no, there is no viable First Amendment claim; if the answer is yes, there may be a viable First Amendment claim. Id. at 1958; see also Battle, 468 F.3d at 760; Ferrara v. Mills, 781 F.2d 1508, 1512 (11th Cir. 1986)("If the employee's speech cannot fairly be characterized as constituting speech on a matter of public concern, the inquiry is at an end.") The burden of proof is upon plaintiff to demonstrate that his speech was as a citizen on a matter of public concern. Ferrara, 781 F.2d at 1514; Morales v. Stierheim, 848 F.2d 1145, 1148 n.4 (11th Cir. 1988), cert. denied, 489 U.S. 1013 (1989).

Speech involves a matter of public concern, and therefore is entitled to First Amendment protection, only if it can fairly be considered as relating to a matter of political, social, or other

concern to the community. <u>Connick</u>, 461 U.S. at 146; <u>Akins</u>, 420 F.3d at 1303. This must be determined by "the content, form, and context of a given statement, as revealed by the whole record." <u>Mitchell v. Hillsborough County</u>, 468 F.3d at 1283 (quoting <u>Connick</u>, 461 U.S. at 147-148). A court must be mindful that an employee's speech is rarely entirely private or public, and that it is the "main thrust" of the speech that must be determined. <u>See</u> <u>Mitchell</u>, 468 F.3d at 1283; <u>Akins</u>, 420 F.3d at 1303; <u>Morgan v. Ford</u>, 6 F.3d 750, 755 (11th Cir. 1993), <u>cert. denied</u>, 512 U.S. 1221 (1994). The fact that the speech occurred at work and concerned the subject mater of plaintiff's employment are not dispositive. <u>Garcetti</u>, 126 S. Ct. at 1959. Rather, the controlling factor in such circumstances is whether the expressions were made pursuant to the employee's official duties. <u>Garcetti</u>, 126 S. Ct. at 1959-60; <u>see also</u> <u>Gonzalez v. Lee County Hous. Auth.</u>, 161 F.3d 1290, 1296 n.22 (11th Cir. 1998). In deciding whether an employee's speech touched on a matter of public concern, the court asks "whether the 'main thrust' of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was." <u>Mitchell</u>, 468 F.3d at 1283 (internal citations omitted).

The Supplemental Complaint alleges plaintiff, the Director of Utilities, engaged in the following relevant speech: Plaintiff sent a "Status Report to Mayor Hamilton: Water and Wastewater Treatment

Plants, July 13, 2004." This status report discussed the work which needed to be done on the structures and equipment; reported that all processes were within DEP requirements and a sampling program has been submitted to DEP; advised that the City was subject to DEP fines and penalties unless certain action was taken with regard to all isolation valves in the distribution system, and that manpower was short and that plaintiff was not sure whose job it is to coordinate this work; and advised that the new permit for the STP has several contingent items which must be performed before the permit can be issues and that this work must be done. (Doc. #105-2, p. 1.)

Plaintiff submitted a "Status Report STP/WTP Mayor Hamilton 08-26-04" reporting on the status of various structures. The report stated that the north sludge digester was a high priority with the on-coming season; that the roof of the Copeland water plant needed re-inspection; there were noise problems at the EQ tank; and process mixers were broken; all VFD units were inoperable but not broken. (Doc. #105-2, p. 3.)

Plaintiff submitted a "Status Report: Water & Sewage Systems, October 14, 2004" which advised that the equalization mechanical mixers needed to be repaired; the south filter wash-water pump needed repair; the east clarifier gearbox was failing creating a high potential for sludge wash-outs; the north digester needed holes repaired and two coats of bitumastic; a pump at WTP needed seals; telemetry work was needed; the water mains would be flushed

before season; and work on the isolation valves was needed. (Doc. #105-2, p. 4.)

In a "Status Report: Water & Sewage Systems c/o Dottie Smallwood, City Clerk October 21, 2004" plaintiff advised that repairs would proceed on the leaks in the north digester; a new wash-water pump was being installed on north filter; the equalization tank mixers were being repaired; there was a very high I/I all week for unknown reasons; coal tar epoxy had been ordered to coat the north digester tank and repair leaks; paint had been ordered for all steel structures; samples were being taken to the lab, but a contingency plan was needed; work needed to be resumed on the isolation valves; and bacteriological clearance was being done the following week on a certain project. (Doc. #105-2, p. 5.)

In a January 31, 2005 "Memorandum" to Mayor Hamilton, plaintiff reported they were "reaching a crisis situation at the STP." Plaintiff stated that "the season is here and the Seafood festival is coming up. I suddenly have a major shortage of digester space (sludge holding). The drying beds are full." Plaintiff reported that on Friday night the sludge in the clarifier washed out onto the filters, and plaintiff had to bypass to the reject tank, and it took him all weekend to straighten out the mess. Plaintiff made reference to his status reports, and stated that DEP has mandated repair of this tank for years. Plaintiff suggested that the holes that have become too large for the epoxy to cover be welded. Plaintiff further stated that "[t]he proximity

of the digesters to the river is a great concern. To keep sludge from ultimately going out to the river we are going to have to rent some tankage to store the sludge. We cannot haul sludge for land application because our permits prohibits this. Maybe we can haul it to the County for disposal." Plaintiff also stated that he has to notify DEP of the problem, and that if he didn't get his extra training within the next three months his license would not be renewed. (Doc. #105-2, p. 6.)

Under the principles summarized above, the Court finds that this speech did not involve a matter of public concern. The main thrust of the speech is plaintiff's work and the status of that work. The reports were generated in the normal course of plaintiff's duties as Director of Utilities, and discussed subjects which were under plaintiff's job responsibility. The reports were sent to city officials with supervisory responsibility for the city, and was motivated by plaintiff's employment position. Therefore, this speech is not protected by the First Amendment, and plaintiff's termination did not violate his First Amendment right to free speech.

**(4)**

Even assuming the Supplemental Complaint alleged a violation of plaintiff's First Amendment right, Mayor Hamilton's actions did not violate clearly established constitutional law. Plaintiff attempts to cast his speech in the context of public safety. There are indeed cases holding speech concerning public safety may be

protected by the First Amendment.  See Cook v. Gwinnett County Sch. Dist., 414 F.3d 1313, 1319 (11th Cir. 2005)("In various contexts, we have made it clear that speech relating to the safety of the public involves a matter of public concern.")  Plaintiff cites no case protecting speech concerning environmental concerns in general or sludge problems in particular.  Indeed, the Eleventh Circuit has held that its prior precedent precluded a clearly established free speech right even where the speech related directly to personal safety.  Green v. Barrett, No. 06-15104, 2007 WL 754634 (11th Cir. March 14, 2007)(chief jailer who testified jail was not safe was not protected by First Amendment).

The Court finds that when plaintiff made the speech identified in the Supplemental Complaint, he was not exercising a clearly established First Amendment right.  Therefore, Mayor Hamilton in his individual capacity is entitled to qualified immunity on plaintiff's § 1983 claim.

**V.**

Plaintiff seeks summary judgment because all his speech involved matters of public concern because he spoke about wastewater treatment, which itself is clearly a matter of public concern.  For the reasons discussed above, the Court finds that the speech did not involve matters of public concern, and therefore the motion for summary judgment will be denied.

The Court will deny Mayor Hamilton's Motion to either Strike plaintiff's Motion for Partial Summary Judgment or Defer Ruling on

the motion (Doc. #71), the Motion of Defendant City to Strike Portions of Plaintiff's Affidavit (Doc. #62), and Hamilton's Motion for Protective Order, or Alternatively to Expedite Ruling on Hamilton's Motion to Dismiss or Alternatively to Allow Hamilton to Conduct Discovery Regarding Plaintiff's First Amendment Retaliation Claim (Doc. #111) as moot.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant City of Everglades City's, Florida's Motion to Dismiss Count I of Second Amended Complaint (Doc. #50), deemed to relate to Count II of the Supplemental Complaint, is **DENIED**.

2. Plaintiff Lawrence H. Stone's Motion for Partial Summary Judgment (Doc. #53) is **DENIED**.

3. Defendant Sammy Hamilton, Jr.'s Motion to Dismiss Count I of Second Amended Complaint (Doc. #56), deemed to relate to Count II of the Supplemental Complaint, is **GRANTED**.

4. The Motion of Defendant City to Strike Portions of Plaintiff's Affidavit (Doc. #62) is **DENIED**.

5. Defendant Sammy Hamilton's Motion to Either Strike Plaintiff's Motion for Partial Summary Judgment or Defer Ruling on the Motion (Doc. #71) is **DENIED**.

6. The Motion to Dismiss Count I of Plaintiff's Supplemental Complaint by Defendant Hamilton (Doc. #109) and the City (Doc. #113) are **GRANTED** without prejudice.

7. Defendant Hamilton's Motion for Protective Order, or Alternatively to Expedite Ruling on Hamilton's Motion to Dismiss or Alternatively to Allow Hamilton to Conduct Discovery Regarding Plaintiff's First Amendment Retaliation Claim (Doc. #111) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __26th__ day of March, 2007.

                                               _____
                                               JOHN E. STEELE
                                               United States District Judge

Copies:
Counsel of record